UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| BASATNE INTERNATIONAL, LLC, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| vs. | § | CIVIL ACTION NO._____ |
| | § | [JURY DEMAND] |
| STANLEY RANDALL TEELE, | § | |
| | § | |
| *Defendant.* | § | |

## COMPLAINT AND JURY DEMAND

For its Complaint against Defendant Stanley Randall Teele ("Teele"), Plaintiff Basatne International, LLC ("Basatne") alleges, and states as follows:

### I.    PARTIES

1.    Plaintiff Basatne International, LLC is a Texas limited liability company, duly authorized to conduct business in the State of Texas, with its principal place of business located at 1275 W. 17th St., Suite 600, Grapevine, Texas 76051. The sole member of Basatne is Basatne Holdings, Inc., a Texas for-profit corporation that is domiciled in Texas.

2.    Defendant Stanley Randall Teele is a citizen of Colorado, with his primary residence at 1814 Vine Cliff Hts., Colorado Springs, CO 80921. He may be served personally at his residence via mail.

3.    Accordingly, Basatne and Teele are residents of different states.

### II.    JURISDICTION AND VENUE

4.    Basatne incorporates the factual allegations in this pleading in support of its jurisdictional and venue allegations.

5.      Jurisdiction is proper in this Court under 28 U.S.C. § 1332(a)(1) because Basatne and Teele are citizens of different states and the amount in controversy exceeds $75,000, excluding interest and costs.

6.      This Court has personal jurisdiction over the out-of-state defendant through the Texas long-arm statute, TEX. CIV. PRAC. & REM. CODE § 17.042, specifically because the out-of-state defendant committed a tort in whole or in part in Texas and transacted business by contracting with Basatne, a Texas resident, for services that were to be performed, in whole or in part, in Texas, and that were negotiated, in whole or in part, in Texas.

7.      Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because it is the judicial district in which a substantial part of the events and/or omissions giving rise to the claims occurred.

8.      At all times relevant to this lawsuit, Basatne's principal place of business was located in Tarrant County, Texas, including when the sales and contracts complained of herein were negotiated, executed, and performed and when the tort claims occurred.

9.      Similarly, Teele transacted business and/or committed torts in this venue because the communications, misrepresentations, and other conduct complained of herein, including damages caused, occurred, or otherwise were directed via telephone, email, and other electronic means to Basatne in Tarrant County, Texas.

### III.    FACTS

10.     Basatne incorporates by reference the allegations set forth in the preceding paragraphs as if fully written herein.

11.     Basatne is a leader in the distribution of consumer electronics across the world. Basatne is also heavily involved in "reverse logistics"—that is, the distribution of consumer electronics like cell phones, tablets, laptops, and other devices through the supply chain from an

end user back to a manufacturer or retailer—at the heart of what is referred to as the "circular economy" surrounding electronic devices.

12.    From its headquarters in the Dallas area, Basatne assists original equipment manufacturer ("OEM") partners to distribute new products, provide return goods management, and provide logistics solutions around the world. Basatne also helps OEMs and others recover, remarket, and dispose of used electronic products, including corporate-owned IT assets. As a company servicing the business-to-business market, Basatne often acts as a middleman between companies and retailers, purchasing a large volume of products directly from manufacturers, then reselling and distributing those products to individual retailers.

13.    An experienced supply chain professional, Defendant Teele is a former Senior Director of AppleCare Service Operations for Apple, Inc. Teele also spent time as the Vice President, Worldwide Refurbishment and Warranty for GameStop, Inc.

14.    On September 12, 2023, Teele executed an Independent Contractor Agreement (the "Agreement") to prove certain services to Basatne in accordance with the launch of Basatne's Ardroid project in Dubai, U.A.E. (the "Project").

15.    The terms of the Agreement are incorporated herein by reference as if reproduced in their entirety, and the Agreement is attached hereto as **Exhibit 1**.

16.    Those services included overseeing the installation and commissioning of an automated robotic machinery known as a "RFA Machine," that Basatne purchased from Apkudo, Inc. ("Apkudo").

17.    Among other things, the terms and conditions of the Agreement specifically addressed Mr. Teele's receipt of certain trade secrets, customer lists, and other confidential, proprietary, or privileged information that Basatne shared with Mr. Teele.

18.    Specifically, under Section 8 of the Agreement, Mr. Teele was required to abide by the following:

a. Independent Contractor agrees not to disclose or communicate, in any manner, either during or after Independent Contractor's agreement with Company, information about Company, its operations, clientele, or any other information, that relate to the business of Company including, but not limited to, the names of its customers, its marketing strategies, operations, or any other information of any kind which would be deemed confidential, a trade secret, a customer list, or other form of proprietary information of Company. Independent Contractor acknowledges that the above information is material and confidential and that it affects the profitability of Company. Independent Contractor agrees to return all information given to Independent Contractor by Company and copies of all records created in the course and scope of Independent Contractor's assignment.

b. Independent Contractor understands that any breach of this provision, or that of any other Confidentiality and Non-Disclosure Agreement, is a material breach of this Agreement. To the extent Independent Contractor feels they need to disclose confidential information, they may do so only after obtaining written authorization from an officer of the Company.

c. Independent Contractor acknowledges that use or disclosure of any Confidential Information in a manner inconsistent with this Agreement will give rise to irreparable injury for which damages would not be an adequate remedy. Accordingly, in addition to any other legal remedies which may be available at law or in equity, Company shall be entitled to equitable or injunctive relief against the unauthorized use or disclosure of Confidential Information. Company shall be entitled to pursue any other legally permissible remedy available as a result of such breach, including but not limited to, damages, both direct and consequential. In any action brought by Company under this Section, Company shall be entitled to recover its attorney's fees and costs from Independent Contractor.

19.    Sections 9 and 10 of the Agreement further included express prohibitions against Teele's solicitation of Basatne's customers, partners, suppliers, and vendors, among others, "for the purpose of inducing such party to terminate its relationship with Company in favor of Independent Contractor or another business directly or indirectly in competition with Company."

**A.    Basatne Introduces Teele to Screentech**

20.    On or around November 16, 2023, Basatne sent Teele on an all-expense paid trip to Athens, Greece, along with Osaid Abuelnasr of Basatne, to see Mobile Advanced Technologies LLC and/or Nixon Enterprises Ltd., which are understood to be doing business as Screentech ("Screentech"). The purpose was to review Screentech's re-glassing technology–which by all accounts impressed Teele–and to pursue acquisition of that technology for Basatne.

21.    Days later, on November 19, 2023, Teele acknowledged that Screentech was Basatne's prospective acquisition target, noting in a WhatsApp message to Basatne's Chief Executive Officer, Ammar Aboulnasr:

> I see some really interesting options coming out of the visit to Athens.. the tech is pretty solid, fits the 'automation and high tech' solutions we want for Ardroid and could have upside beyond just a good solution for Dubai repair.. we should sync but I don't want to shift your focus away from the Gov't ceremony so we can sit tight until you come up for air.

22.    Teele recognized that Basatne saw significant value in acquiring Screentech and its "pretty solid" technology, explaining on December 4, 2023, that "[Basatne] can also sell them Screentech too if we complete that deal." Teele promised to provide "more concrete numbers on Screentech" to Basatne by the following day.

23.    That same day, December 4, 2023, Teele suggested to Mr. Aboulnasr that the next day's meeting agenda "will be my updating you on the current state of doing a deal with Screentech and discussing a formal offer to me for a full-time position…," coupling the two topics together, as Teele sought both a full-time employment position and an equity ownership in Basatne's Ardroid project.

24.    Upon information and belief, around this same period of time, Teele reached out to one or more competitors or vendors of Basatne to inquire about personal employment and ownership options, noting that he had an "opportunity"—i.e., the use of Screentech's "pretty solid"

technology—to discuss with them. In short, Teele was shopping Basatne's confidential and proprietary information, particularly regarding Screentech, to negotiate a "better deal" for himself with other companies.

25.    During the following weeks of back-and-forth negotiations, Basatne made a full-time employment and ownership offer to Teele, as he had desired. Basatne believed that the two sides had reached a verbal agreement. Teele later backtracked, and Basatne would soon find out why.

**B.    Teele Leads Basatne's Transaction with Screentech**

26.    Because of the Agreement, Teele had learned of Basatne's confidential plans for how to use Screentech's machinery and its technology, particularly at Basatne's Ardroid facility in Dubai. Basatne had not shared that information outside of the company.

27.    On December 5, 2023, Teele provided a three-page term sheet to Ammar Aboulnasr of Basatne. Along with the purchase and installation of Screentech's re-glassing production line (including Airtech, Freezetech, and Fibertech machines) at the Ardroid facility, those terms also called for Basatne to acquire a 25% equity ownership interest in Screentech [e.g., €500k with €250k (50%) advanced payment (late January/early February 2024) and €250k paid through OPEX at €2/unit until paid off]. Basatne also would receive an option to acquire another 26% equity interest, which would push its ownership stake to 51% upon exercise. The deal would give Basatne exclusive sales and distribution rights for the Screentech technology in the Middle East immediately, with broader global sales and distribution rights once becoming the 51% controlling shareholder.

28.    On December 15, 2023, acting as an agent on behalf of Basatne, Teele represented that he had reached a mutual agreement with Mr. Harry Kalyvas of Screentech for Basatne to implement Screentech's re-glassing system at its new Ardroid facility in Dubai.

29.     On December 22, 2023, Screentech issued an invoice to Basatne for the initial line setup at the Ardroid facility in Dubai in the total amount of €36,529.84 (€20,000 paid upon issue and presentation of the invoice and €16,529.84 payable upon completion of a pilot test week in Dubai).



| NIXON ENTERPRISES LTD | | | | | | |
| --- | --- | --- | --- | --- | --- | --- |
| 149 Queen's Road Central 9/F Wah Yuen Building Hong Kong harry@screentech.io | | | | | | |
| **Bill To:** BASATNE INTERNATIONAL LLC 1275 W 17th St Suite 600, Grapevine TX 76051 United States osaid@basatne.com | | **Ship To:** Union Logistics Warehouse I04, DAFZA Dubai, USA Attention: Mr. Mahmoud Abusway Tel: +971 508 208 320 | | | | |
| Invoice # BAS01 **Date:** 22/12/23 | | **Incoterm:** EXW Athens | | | | **Salesperson:** Raiko Schott |
| SKU | QUANTITY | UNIT PRICE USD | HS CODE | | PACKING LIST MARKS&No. | TOTAL USD |
| **Machines** | | | | | | |
| 1 [ST0098767] AIRTECH machine | 3 | 4953.75 | 8486300 0 00 | | **CARTON BOX 1 -3** | $14,861.25 |

7

| | | | | | |
|---|---|---|---|---|---|
| 2 [ST0098968] Air compressor for AIRTECH | 3 | 125 | 8414401 0 00 | **CARTON BOX 4 - 6** | $375.00 |
| 3 [ST0098969] Vaccum pump for AIRTECH | 3 | 125 | 8414108 9 90 | **CARTON BOX 7-10** | $375.00 |
| 4 [ST0098765] FREEZETECH machine | 1 | 3995 | 8418302 0 99 | CARTON BOX 11 | $3,995.00 |
| 5[ST0098766] FIBERTECH machine | 2 | 4990 | 8456119 0 00 | CARTON BOX 12 - 13 | $9,980.00 |
| | | | **Subtotal** | | **$29,586.25** |
| **All Moulds** | | | | | |
| 6[VARIOUS] Screentech Mould set | 3 | 2500 | 7616 9910 99 | CARTON BOX 14 | $7,500.00 |
| | | | **Subtotal** | | **$7,500.00** |
| **Accessories, Tools, Consumables** | | | | | |
| 7 [VARIOUS]Screentech Accessories,Tools&Consumables | 3 | 1998.4 | 5601211 0 00 | **CARTON BOX 15** | $5,995.20 |
| | | | **Subtotal** | | **$5,995.20** |
| **Supporting Machines** | | | | | |
| 8 [ST0098943] UVTech | 3 | 500 | 8543709 0 99 | **CARTON BOX 16** | $1,500.00 |
| 9 [ST0098942] HeatTech | 2 | 825 | 8419899 8 00 | **CARTON BOX 17** | $1,650.00 |
| 10 [ST0098941] VacTech | 3 | 825 | 8419899 8 00 | CARTON BOX 18 | $2,475.00 |
| | | | **Subtotal** | | **$5,625.00** |
| | | | TOTAL | | $48,706.45 |
| | | Less Discount (Dubai Project+Lab Training Equipment) | | 25% | $12,176.61 |
| | | TOTAL | | | $36,529.84 |



**Payment Terms: $20 000 paid upon issue and presentation of invoice, $16 529.84 payable upon completion of the pilot test week in Dubai**
**Incoterms : Ex warehouse Athens - pick up address : Vasiissis Sofias 87, Marousi, 15125, Athens, Greece**
**Packing list with weights and dimensions to be provided once all goods packed and ready**



**Payment Details:**
Bank: HSBC
Acc. No:
Account Name: Nixon
Enterprises Limited  Swft
Code:

**THANK YOU FOR YOUR BUSINESS!**

30.     At all relevant times, Teele was directly and intimately involved in these negotiations with Screentech as Basatne's "point person" and Basatne relied upon his representations.

31.     Through his role in those negotiations, Teele directly received material information related "to the business" of Basatne, including its confidential and proprietary information, such as its plans regarding the Screentech acquisition.

**C.     Teele Separates From Basatne for Apkudo**

32.     Without explanation, on December 27, 2023, Teele abruptly decided to reject Basatne's offer of full-time employment and equity ownership. He then separated himself from further services under the Independent Contractor Agreement.

33.     Although Basatne paid Teele for his services through December 28, 2023, Basatne believes that Teele provided services to and/or was already in discussions with Apkudo about personal employment without informing Basatne of the same during the time period of the Agreement.

34.     Upon information and belief, Apkudo formally hired Teele immediately following his departure from Basatne to serve as its Executive Vice President, Device Processing, with the goal of scaling its Device Processing Business Unit.

35.     In fact, just days after separating from Basatne, Teele appeared at the 2024 International Consumer Electronics Show ("CES") from January 7 through January 10, 2024, on behalf of Apkudo, Basatne's vendor.

36.     Upon information and belief, during that CES convention, Teele introduced one or more of Apkudo's personnel to Screentech representatives.

37.     Upon information and belief, Teele also began to solicit various customers or vendors of Basatne for his benefit or that of Apkudo.

38.     Apkudo promoted the hire on social media, like LinkedIn, months later, as follows:



**D.      Screentech Pivots And Rejects Basatne After Teele Joins Apkudo**

39.      With Basatne understanding that a deal had been reached, Screentech delivered its machines to the Ardroid facility in January 2024, consistent with what was agreed to in the December 22, 2023 invoice.

40.      After the machinery arrived, a team of five representatives from Screentech traveled to the Ardroid facility in Dubai and installed the Screentech machines from January 29, 2024, through February 5, 2024. By all accounts, Basatne believed that the deal that Teele had orchestrated was moving forward as planned.

41.      During that trip, Harry Kalyvas of Screentech showed Osaid Abuelnasr of Basatne an email sent from a representative of Apkudo indicating the latter's interest in taking a position in Screentech's technology, as they were "impressed" by it. Mr. Abuelnasr advised that Apkudo's newly expressed interest was contrary to the existing deal in place with Basatne. Abuelnasr requested that Kalyvas pack up the Screentech machines and leave if Screentech had decided it was moving forward with Apkudo. Kalyvas recanted and promised that Screentech would never engage with Apkudo given the conflict of interest. Screentech then continued to install the machines at the Ardroid facility.

42.      Consistent with that, on February 5, 2024, Kalyvas sent Basatne two additional, separate invoices related to the Ardroid project, an "Airfare Invoice" and a "Consulting Invoice," for Screentech personnel's travel expenses and consulting services rendered in Dubai.




43.      On February 9, 2024, Basatne approached Screentech about its option to acquire up to 51% equity ownership. At this point, Basatne instead wanted to secure full 100% ownership of Screentech. Screentech rejected that offer, and it asserted that it was not interested in Basatne owning an equity position *at all*, contrary to what Teele and Kalyvas both had represented.

44.      Despite his representations, Teele apparently had failed to finalize a written agreement with Screentech that would provide Basatne with equity ownership in the Screentech technology.

45.      On March 6, 2024, Kalyvas advised Basatne, without warning, that Screentech was engaging in acquisition talks with a third-party Greek company, directly contravening the terms of agreement that Basatne believed Teele had negotiated between the parties.

46.      Around this same time period, Apkudo's CEO, Josh Matthews, reassured Basatne in a telephone call that Apkudo's employment of Teele would not affect Basatne's Screentech deal, and he insisted that Apkudo and Basatne would continue to work together.

47.      Upon information and belief, Basatne believes that Screentech changed course after being approached by Teele and/or Apkudo with an intention to acquire the technology for Apkudo's own benefit or for the benefit of one of Apkudo's unidentified customers.

48.     Basatne reasonably believes that Teele—armed with direct knowledge of Basatne's confidential or proprietary information gained from negotiating with Screentech—played an instrumental role in Apkudo's involvement with Screentech for the same purpose.

49.     Upon information and belief, Teele misappropriated and/or shared Basatne's confidential or proprietary information concerning Screentech with Apkudo.

50.     Under the Agreement, Teele was prohibited, directly or indirectly, from soliciting any supplier or vendor of Basatne to terminate its relationship in favor of Teele or another business directly or indirectly in competition with Basatne. Screentech, however, did just that.

51.     Basatne reasonably believes that Teele had a role in arranging for Apkudo and/or Telus (or their affiliates) to meet with Screentech to make a more lucrative deal than the one in which Teele was tasked by Basatne to close, as he knew the particulars of Basatne's deal terms.

**E.     Teele Acted To Further His Own Personal And Apkudo's Interests**

52.     Basatne reasonably believes that Teele took actions in breach of the Agreement to Basatne's detriment while using its protected information to further his own individual relationship with Apkudo, which resulted in his current employment.

53.     Upon information and belief, Teele shopped Basatne's confidential and proprietary information that he learned under the Agreement to others in the hopes of securing for himself favorable full-time employment and/or equity ownership terms.

54.     Upon information and belief, Teele made material misrepresentations to Basatne to further his own interest in Apkudo.

55.     For example, on November 8, 2023, Apkudo requested that Basatne sign the Certificate of Acceptance related to completion of both phases of User Acceptance Testing ("UAT") on the RFA Machine, despite significant incomplete deliverables. Basatne responded to Apkudo and refused to sign at that time, advising that the Statement of Work was far from complete

based upon several missing items. Weeks later, Teele intentionally misled Basatne into signing the Certificate of Acceptance due to certain false, material misrepresentations—specifically, that Apkudo would be able to complete both phases of the UAT by January 1, 2024, when he knew or carelessly disregarded that Apkudo would be able to do so. Basatne also believes that Teele falsely stated on December 1, 2023, that Apkudo's CEO, Josh Matthews, required the Certificate to be immediately executed, despite the incomplete UAT, before it would proceed any further with the Ardroid project. As a result of that duress, Basatne signed the Certificate even though Apkudo's RFA Machine was not ready to perform as represented.

56.     Teele specified that he was confident that the RFA Machine would be ready to work by January 2024 when he knew or should have known that such a milestone was not possible.

57.     Upon information and belief, Teele made these representations to benefit himself and to further his negotiations with Apkudo for a permanent employment position or equity position, regardless of his obligations as an independent contractor of Basatne.

## IV.     CAUSES OF ACTION

### A.     COUNT ONE – FRAUD/FRAUDULENT MISREPRESENTATION

58.      Basatne incorporates by reference the allegations set forth in the preceding paragraphs as if fully written herein.

59.     At various times as detailed above, Teele made certain misrepresentations to Basatne which were material and false.

60.     For example, while serving as its agent, Teele misrepresented Screentech's "deal" with Basatne. Teele represented that he had reached a deal with Screentech for Basatne to become the controlling shareholder in Screentech. These terms are laid out in a three-page term sheet which Teele presented to Ammar Aboulnasr of Basatne on December 5, 2023. Additionally, as part of that "deal," Teele represented to Basatne on December 15, 2023, that he had reached an agreement

with Harry Kalyvas of Screentech for Basatne to implement Screentech's re-glassing system at its new Ardroid facility in Dubai. The agreement, according to Teele's false representations, was premised upon Basatne's purchase of three lines of Screentech machinery (including Airtech, Freezetech, and Fibertech machines) and Screentech re-glassing credits for a negotiated price, and also allowed for Basatne's acquisition of both an equity interest in Screentech and exclusive distribution rights to Screentech's patented technology.

61.     When Teele made the misrepresentations, Teele knew that the misrepresentations were false, or Teele made the misrepresentations recklessly, as a positive assertion, and without knowledge of their truth. Teele made the misrepresentations with the intent that Basatne would act on such falsehoods.

62.     Basatne relied on such fraudulent misrepresentations to its detriment and has suffered actual, out-of-pocket damages and injury, for which Basatne seeks recovery herein, in an amount in excess of $75,000, to be established more particularly at trial.

63.     Teele's conduct was wanton, intentional, and done with malice, with full knowledge of the injury which would ensue to Basatne. Such knowing, intentional, malicious conduct justifies an award of exemplary damages in an amount sufficient to have the desired punitive and deterrent effects for which Basatne seeks recovery herein.

B.     **COUNT TWO – NEGLIGENT MISREPRESENTATION**

64.     Basatne incorporates by reference the allegations set forth in the preceding paragraphs as if fully written herein.

65.     At all relevant times, while acting as an agent on behalf of Basatne, Teele represented that he had reached a mutual agreement with Screentech for Basatne to implement Screentech's re-glassing system at its new Ardroid facility in Dubai. That agreement also included not only the purchase of three lines of Screentech machinery (including Airtech, Freezetech, and

15

Fibertech machines), but also Screentech re-glassing credits. Teele further represented that Screentech had agreed for Basatne to acquire an equity interest in Screentech, part of which was to be paid upfront in cash, with the remainder to be settled through an operational expenditure plan via the credits system.

66.    These representations about existing facts negligently conveyed false information for the guidance of Basatne in its business.

67.    Teele had a duty to exercise reasonable care or competence in obtaining or communicating the information from Screentech to Basatne, which he failed to do.

68.    Basatne lost time and money by acquiring the Screentech machinery under the promise that it would be receiving exclusive territorial distribution rights and an ability to acquire a controlling interest in Screentech itself in reliance upon the representations made by Teele.

69.    Basatne has suffered pecuniary damages as a result of justifiably relying on the representations made by Teele with respect to the Screentech transaction, beyond any contractual damages, in an amount in excess of $75,000 to be established more particularly at trial.

## C.    COUNT THREE – TORTIOUS INTERFERENCE

70.    Basatne incorporates by reference the allegations set forth in the preceding paragraphs as if fully written herein.

71.    Texas law protects prospective contracts and business relations from tortious interference. *Coinmach Corp. Aspenwood Apt. Corp.*, 417 S.W. 909, 923 (Tex. 2013).

72.    In December 2023, Basatne entered into a business relationship and contracted with Mobile Advanced Technologies LLC and/or Nixon Enterprises Ltd., which are understood to be doing business as Screentech.

73.    Demonstrative of the parties' business relationship, on December 22, 2023, Screentech invoiced Basatne for certain machines that were delivered to Basatne's Ardroid facility

16

in Dubai, U.A.E. Another part of that "deal" called for Basatne to acquire an equity interest in Screentech and exclusive distribution rights to Screentech's patented technology.

74.    At all relevant times, Teele had direct knowledge of Basatne's business relationship with Screentech, as he acted as an agent of Basatne and was personally responsible for negotiating with Screentech on Basatne's behalf.

75.    Nevertheless, in January 2024, as Screentech was installing the various machines at the Ardroid facility, Teele acted with a conscious desire to prevent the relationship from occurring by steering his new employer, Apkudo, to pursue Screentech and its technology to the exclusion of Basatne.

76.    In fact, Teele's conduct resulted in Screentech denying Basatne the ability to obtain an equity ownership interest and denied Basatne the ability to become the exclusive distributor of the patented Screentech technology, as Teele had previously represented would occur.

77.    Teele's conduct was independently tortious or unlawful.

78.    Teele's conduct proximately caused injury to Basatne, as it resulted in Screentech rejecting Basatne's equity acquisition and denying Basatne from further use of the Screentech machines or distribution rights to its patented technology.

79.    Basatne has suffered actual damage or loss as a result of Teele's tortious conduct, in an amount in excess of $75,000, to be established more particularly at trial.

## V.    CONDITIONS PRECEDENT

80.    Basatne incorporates by reference the allegations set forth in the preceding paragraphs as if fully written herein.

81.    Basatne specifically incorporates by reference the "conditions precedent" regarding Basatne's rights to recover herein as if reproduced in their entirety.

82.    All conditions precedent to Basatne's rights to recover have been performed, have occurred, or are otherwise excused.

## VI.    JURY DEMAND

83.    Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Basatne hereby asserts its right to a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

Plaintiff Basatne International, LLC, prays that Defendant Stanley Randall Teele be cited to appear and answer herein, and that upon final trial, that Plaintiff be awarded judgment against Defendant for the following:

A.    Actual damages in an amount in excess of $75,000;

B.    Reasonable and necessary legal fees as may be permitted by law or in equity;

C.    Exemplary or punitive damages in an amount to be determined by the finder of fact;

D.    Pre-judgment and post-judgment at the maximum non-usurious rate allowed by law;

E.    Costs of court;

F.    All other and further relief, in law or in equity, to which Basatne is justly entitled.

Dated: December 18, 2024                Respectfully submitted,

*s/ Adam J. Russ*
Adam J. Russ
Texas State Bar No. 24109435
GORDON, ARATA, MONTGOMERY, BARNETT,
MCCOLLAM, DUPLANTIS & EAGAN, LLC
1001 Fannin St., Suite 3850
Houston, Texas 77002
Phone: 713.333.5573
Email: aruss@gamb.com

and

H. Brandon Jones
Texas State Bar No. 24060043
Cash H. Barker
Texas State Bar No. 24116073
BONDS ELLIS EPPICH SCHAFER JONES LLP
420 Throckmorton, Suite 1000
Fort Worth, Texas 76102
(817) 405-6900 (telephone)
(817) 405-6902 (facsimile)
brandon@bondsellis.com
cash.barker@bondsellis.com

***Attorneys for Plaintiff Basatne International, LLC***